Rule 23 order filed
March 2, 2006;
Motion to publish granted
April 7, 2006.

NO. 5-05-0164

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

*In re* DIANA M., Alleged to Be a Person ) Appeal from the Circuit Court of
Subject to Involuntary Admission ) Madison County.
)
(The People of the State of Illinois, Petitioner- ) No. 04-MH-222
Appellee, v. Diana M., Respondent- )
Appellant). ) Honorable Clarence W. Harrison II,
) Judge, presiding.
_____

PRESIDING JUSTICE SPOMER delivered the opinion of the court:

The respondent, Diana M., appeals an order of the circuit court of Madison County that found her to be a person subject to involuntary admission and that ordered her to be hospitalized in the Department of Human Services (the Department). For the reasons that follow, we reverse the decision of the circuit court.

The respondent was admitted to the Alton Mental Health Center on August 13, 2004, after having been found unfit to stand trial on Rock Island County charges of criminal trespass to a vehicle and burglary. In May 2003, the respondent, who had a history of heavy drinking and crack cocaine use, suffered a severe head injury that rendered her mute. She now communicates by using a mixture of mime, sign language, finger-spelling, and writing. After her head injury, the respondent lived with her father, who helped take care of her. After her father died, the respondent moved in with her daughter. Although the respondent's daughter made arrangements with friends of the family to keep an eye on the respondent, on the day she was arrested, the respondent had wandered away and, when the weather turned nasty, entered a parked vehicle to shelter herself from the rain.

On December 16, 2004, the circuit court of Rock Island County found that the

1

respondent was still unfit and not likely to obtain fitness within one year of having been found unfit. Accordingly, the respondent was remanded to the Department for the initiation of involuntary admission proceedings. On December 22, 2004, a petition for involuntary admission was filed in the circuit court of Madison County. The petition and two supporting certificates alleged that the respondent was a person who was mentally ill and who because of her illness was unable to provide for her basic physical needs in such a manner to guard herself from serious physical harm. The petition was called for a hearing on December 28, 2004. Due to the nature of the charges against her, the respondent was held in the forensic unit of the Department; accordingly, when she appeared for the hearing, she was required by Department regulations to be shackled.

The only witness called by the State was Dr. Ronald Sellers, a licensed clinical psychologist. Dr. Sellers testified that he had frequent contact with the respondent and that he had examined her for purposes of the hearing. He testified that a forensic examination of the respondent indicated "a diagnosis of dementia due to cerebral vascular accident, access 3." Dr. Sellers also testified that the respondent exhibited periodic crying behavior but denied being sad. He opined that the crying was probably "an affective reaction, secondary to brain damage." He also noted the respondent's history of drug and alcohol dependency and testified that the respondent had admitted to "feeling depressed" since her father's death. With regard to medication, Dr. Sellers testified that the respondent was taking Prozac for depression. When asked if the respondent presented a danger to herself or others if discharged, Dr. Sellers testified he believed that the respondent "would be a danger mostly to herself, because she is just not able to maintain any consistent attention or concentration to the task at hand." He projected a discharge date of March 2005, approximately three months from the date of the hearing.

On cross-examination, Dr. Sellers testified that the respondent had shown no signs of

being suicidal. When asked to what extent the respondent's alleged inability to take care of herself, and therefore her alleged danger to herself, was the result of her depression, her head trauma, or her substance-abuse issues, Dr. Sellers testified, "All of the above." At the conclusion of cross-examination, the court examined the witness, asking for a clarification regarding how much of the respondent's condition was related to the head trauma and how much to "actual mental illness" suffered by the respondent. Dr. Sellers testified, "[I]t's more due to head trauma, and that is probably the number one factor." When asked if there was a single, psychological explanation for all the symptoms the respondent was experiencing, Dr. Sellers replied: "No. We can just simply state that based upon the head injury, that she herself testifies to, and the combination of drugs and alcohol over the course of time, it's probably had some impact on her, on her brain, in terms of her ability to function appropriately."

Counsel for the respondent then stated that he wished to have the respondent testify "[t]o the degree possible," and he explained that he had not been aware until the time of the hearing that sign language was useful to the respondent. The trial judge stated *sua sponte* that he would allow counsel to assist the respondent in producing a written affidavit of her testimony. The judge also noted that his understanding was that the respondent's caretakers wished to move her from the forensic unit to the "civil side." After discussing briefly his concerns about the source of the respondent's problems, *i.e.*, head trauma or depression, the judge stated, "[I]f it would be acceptable to [counsel for the respondent], I will go ahead and enter the order today so you could see about getting her transferred today." The judge then stated: "[T]hen I will go ahead and give you leave to supplement the record with the affidavit[;] [i]f that would be acceptable." Counsel for the respondent responded with a "Yes," and the judge stated, "I will *** enter the order today[] and give you 21 days to file materials in support."

Later that day, the court entered the order appealed from, which found the respondent to be a person subject to involuntary admission, ordered her hospitalized within the Department, and granted her 21 days within which to submit materials in support of her position. The next day, December 29, 2004, the respondent filed her testimonial affidavit, in which she testified *inter alia* that she was not dangerous, had no thoughts or intention of hurting herself or anyone else, could meet her own basic needs, wanted to live with her daughter, was not depressed although she was sometimes "sad" about her situation, did not need to remain hospitalized, and could live safely outside the hospital, either alone or with the help of others. On January 3, 2005, the respondent submitted a posttrial motion, which was denied. She filed a timely notice of appeal.

On appeal, the respondent raises two issues, which we restate as follows: (1) whether the trial court erred in entering its order prior to receiving the respondent's testimonial affidavit, thus depriving her of the opportunity to be heard at a meaningful time and in a meaningful manner and (2) whether the trial court's finding that the respondent was a person subject to involuntary admission was contrary to the statutory definition of mental illness and thus was legally erroneous. We need only consider the second argument to conclude that the order of the circuit court must be reversed.

The respondent contends the trial court's finding that the respondent was a person subject to involuntary admission was contrary to the statutory definition of mental illness and thus was legally erroneous. To be subject to involuntary admission, a person must be:

"(1) A person with mental illness and who because of his or her illness is reasonably expected to inflict serious physical harm upon himself or herself or another in the near future[,] which may include threatening behavior or conduct that places another individual in reasonable expectation of being harmed; or

(2) A person with mental illness and who because of his or her illness is unable

4

to provide for his or her basic physical needs so as to guard himself or herself from serious harm without the assistance of family or outside help." 405 ILCS 5/1-119(1), (2) (West 2004).

As the wording of the statute demonstrates, the presence of mental illness is always a prerequisite to involuntary admission in Illinois. Prior to 2003, the Illinois General Assembly had not defined the term "mental illness" for purposes of involuntary admission. The Illinois Supreme Court filled the gap by offering its own definition. In *People v. Lang*, 113 Ill. 2d 407, 453 (1986), the court held that a mentally ill person for purposes of involuntary admission is a person "with an organic, mental[,] or emotional disorder which substantially impairs the person's thought, perception of reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life." In 2003, the General Assembly defined mental illness for involuntary admission purposes more narrowly:

" 'Mental illness' means a mental[] or emotional disorder that substantially impairs a person's thought, perception of reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life[] but does not include a developmental disability, dementia[,] or Alzheimer's disease absent psychosis, a substance abuse disorder, or an abnormality manifested only by repeated criminal or otherwise antisocial conduct." 405 ILCS 5/1-129 (West 2004).

The State is required to prove the basis for involuntary admission by clear and convincing evidence. *In re Jakush*, 311 Ill. App. 3d 940, 944 (2000).

In the case at bar, Dr. Sellers testified that his forensic examination of the respondent indicated "a diagnosis of dementia due to cerebral vascular accident, access 3." Dr. Sellers also testified that the respondent exhibited periodic crying behavior but denied being sad. He opined that the crying was probably "an affective reaction, secondary to brain damage." He also noted the respondent's history of drug and alcohol dependency and testified that the

5

respondent had admitted to "feeling depressed" since her father's death. With regard to medication, Dr. Sellers testified that the respondent was taking Prozac for depression. When asked if the respondent presented a danger to herself or others if discharged, Dr. Sellers testified he believed that the respondent "would be a danger mostly to herself, because she is just not able to maintain any consistent attention or concentration to the task at hand." He projected a discharge date of March 2005, approximately three months from the date of the hearing.

On cross-examination, Dr. Sellers testified that the respondent had shown no signs of being suicidal. When asked to what extent the respondent's alleged inability to take care of herself, and therefore her alleged danger to herself, was the result of her depression, her head trauma, or her substance-abuse issues, Dr. Sellers testified, "All of the above." At the conclusion of cross-examination, the court examined the witness, asking for a clarification regarding how much of the respondent's condition was related to the head trauma and how much to "actual mental illness" suffered by the respondent. Dr. Sellers testified, "[I]t's more due to head trauma, and that is probably the number one factor." When asked if there was a single, psychological explanation for all the symptoms the respondent was experiencing, Dr. Sellers replied: "No. We can just simply state that based upon the head injury, that she herself testifies to, and the combination of drugs and alcohol over the course of time, it's probably had some impact on her, on her brain, in terms of her ability to function appropriately."

The court then found the respondent to be a person subject to involuntary admission, a finding that required, as explained above, the existence of mental illness. However, as the plain language of the statute indicates, both dementia and substance-abuse disorders are specifically excluded from the definition of "mental illness" for involuntary admission purposes. 405 ILCS 5/1-129 (West 2004). Accordingly, to the extent the trial court's finding

6

was based upon the effects of the respondent's dementia—which according to Dr. Sellers was "probably the number one factor"—or upon the effects of the respondent's drug and alcohol abuse, the finding was legally erroneous and must be reversed. To the extent the trial court's finding was based upon the respondent's alleged depression, we conclude that the finding is not supported by the sparse and inconclusive evidence offered by Dr. Sellers regarding any such depression. A thorough review of the evidence demonstrates that the State failed to prove by clear and convincing evidence that the alleged depression of the respondent mandated an involuntary admission. No evidence was presented of psychosis, nor was any evidence presented that demonstrated how the respondent's alleged depression prevented her from meeting her basic physical needs or how it substantially impaired her thought, perception of reality, emotional process, judgment, behavior, or ability to cope with the ordinary demands of life. The scant testimony related to depression was far too inconclusive to support an involuntary admission. Accordingly, to the extent the trial court's finding was based upon the alleged depression, it was erroneous and a reversal is required.

For the foregoing reasons, the decision of the circuit court of Madison County is reversed.


Reversed.


DONOVAN and McGLYNN, JJ., concur.

7

NO. 5-05-0164

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| *In re* DIANA M., Alleged to Be a Person Subject to Involuntary Admission<br><br>(The People of the State of Illinois, Petitioner-Appellee, v. Diana M., Respondent-Appellant). | ) Appeal from the Circuit Court of<br>) Madison County.<br>)<br>) No. 04-MH-222<br>)<br>) Honorable Clarence W. Harrison II,<br>) Judge, presiding. |

**Rule 23 Order Filed:** March 2, 2006
**Motion to Publish Granted:** April 7, 2006
**Opinion Filed**: April 7, 2006

**Justices**: Honorable Stephen L. Spomer, P.J.

Honorable James K. Donovan, J., and
Honorable Stephen P. McGlynn, J.,
Concur

**Attorney for Appellant** — Anthony E. Rothert, Staff Attorney, Legal Advocacy Service, Guardianship and Advocacy Commission, Metro East Regional Office, 4500 College Avenue, Suite 100, Alton, IL 62002

**Attorneys for Appellee** — Hon. William A. Mudge, State's Attorney, Madison County Courthouse, 157 N. Main Street, Edwardsville, IL 62025; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director, T. David Purcell, Staff Attorney, Office of the State's Attorneys Appellate Prosecutor, 730 E. Illinois Highway 15, Suite 2, P.O. Box 2249, Mt. Vernon, IL 62864